UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| NATIONWIDE MUTUAL INSURANCE COMPANY, | CASE NO. C15-5123 BHS |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR DECLARATORY JUDGMENT |
| v. | |
| PUYALLUP BASKETBALL ACADEMY, et al., | |
| Defendants. | |

This matter comes before the Court on Plaintiff Nationwide Mutual Insurance Company's ("Nationwide") motion for declaratory judgment (Dkt. 12).  The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby denies the motion for the reasons stated herein.

**I. PROCEDURAL HISTORY**

On March 2, 2015, Nationwide filed a declaratory judgment action under 28 U.S.C. § 2201 against Defendants Jonnie Barr ("Mr. Barr"), Sue Barr ("Ms. Barr"), Puyallup Basketball Academy ("PBA"), and Shari Furnstahl ("Furnstahl").  Dkt. 1

1  ("Comp."). Nationwide seeks a declaratory judgment that Nationwide does not have a

2  duty to defend or indemnify Mr. Barr, Ms. Barr, and PBA in the underlying lawsuit. *Id.*

3  ¶ 31.

4      On April 23, 2015, Nationwide filed a motion for a declaratory judgment. Dkt.

5  12. On May 15, 2015, Furnstahl responded. Dkt. 16. On May 18, 2015, Mr. Barr, Ms.

6  Barr, and PBA responded. Dkt. 18. On May 22, 2015, Nationwide replied. Dkt. 21.

7                    **II. FACTUAL BACKGROUND**

8  **A.    Underlying Suit**

9      Mr. Barr and Ms. Barr own PBA. Comp. ¶ 2. C.F., a minor child, attended PBA

10 from September 2010 to September 2011. Dkt. 13, Declaration of D. Jeffrey Burnham

11 ("Burnham Dec."), Ex. 1 ¶¶ 3.2, 3.4.

12     On May 15, 2012, Mr. Barr was charged with fourth degree assault for unlawfully

13 and intentionally assaulting C.F. with sexual motivation. Burnham Dec., Ex. 3. On

14 November 4, 2013, Mr. Barr pled guilty to fourth degree assault. Burnham Dec., Ex. 4.

15 In his guilty plea, Mr. Barr states that "[o]n 2/1/11–12/8/11 . . . [he] assaulted another

16 person ([C.F.] DOB 9/13) intentionally by having unpermitted and/or offensive contact

17 with that person." *Id.*

18     On April 18, 2014, Furnstahl, as guardian *ad litem* for C.F., filed suit against Mr.

19 Barr, Ms. Barr, and PBA in Pierce County Superior Court ("underlying suit"). Burnham

20 Dec., Ex. 1. Furnstahl alleges that C.F. was assaulted, unlawfully detained, and had her

21 privacy invaded while she was attending PBA from September 2010 to September 2011.

22 *Id.* ¶¶ 3.3–3.6. Furnstahl also alleges that the defendants negligently breached their duty

to prevent reasonably foreseeable bodily injury and assault. *Id.* ¶ 3.3. Furnstahl asserts

causes of action for "negligence, invasion of privacy, battery, assault, intentional

infliction of emotional distress, [and] false imprisonment." *Id.* ¶ 4.2. Furnstahl seeks

damages for emotional distress, physical pain and suffering, mental pain and suffering,

medical expenses, potential lost wages, diminution of future earning capacity, and

decrease in ability to enjoy life. *Id.* ¶ 5.1.

On May 4, 2015, Furnstahl filed an amended complaint in the underlying suit.

Dkt. 17, Declaration of James Beck ("Beck Dec."), Ex. J. The amended complaint

changes the applicable time period to September 2010 through 2011. *See id.* ¶¶ 3.4–3.5.

The amended complaint also alleges that the Defendants placed C.F. in a false light by

recklessly disregarding the falsity of statements. *Id.* ¶ 3.6. Furnstahl asserts the same

causes of action. *Id.* ¶ 4.2.

**B.    Nationwide Policies**

In 2009 and 2010, Nationwide issued two insurance policies to PBA. The first

policy had a term of March 1, 2009 to March 1, 2011. Burnham Dec., Ex. 5 at 3, 13.

The second policy had a term of March 1, 2010 to March 1, 2013.[1] Burnham Dec., Ex. 6

at 3, 15.

The Nationwide policies provide general liability coverage for "sums that the

insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to

---

[1] In its motion, Nationwide states that the policies ran from December 30, 2009 through
December 30, 2011. Dkt. 12 at 3. However, the policies' declarations pages list the dates
provided above. *See* Burnham Dec., Ex. 5 at 5, 13; Ex. 6 at 3, 15.

1  which this insurance applies." Burnham Dec., Ex. 5 at 19; Ex. 6 at 20.  The policies

2  define "bodily injury" as "bodily injury, sickness or disease sustained by a person,

3  including death resulting from any of these at any time."  Burnham Dec., Ex. 5 at 30; Ex.

4  6 at 31.

5      The policies also provide general liability coverage for "sums the insured is legally

6  obligated to pay as damages because of 'personal and advertising injury' to which this

7  insurance applies."  Burnham Dec., Ex. 5 at 23; Ex. 6 at 24.  The policies define

8  "personal and advertising injury" as "injury, including consequential 'bodily injury'

9  arising out of one or more of the following offenses: (a) False arrest, detention or

10  imprisonment; . . . (d) Oral or written publication, in any manner, of material that

11  slanders or libels a person . . . ; [or] (e) Oral or written publication, in any manner, of

12  material that violates a person's right of privacy."  Burnham Dec., Ex. 5 at 32; Ex. 6 at

13  33.

14      The Nationwide policies contain several exclusions that are relevant to the instant

15  motion.  First, the policies contain an "expected or intended injury" exclusion to general

16  liability coverage.  Burnham Dec., Ex. 5 at 20; Ex. 6 at 21.  This exclusion precludes

17  coverage for "bodily injury . . . expected or intended from the standpoint of the insured."

18  Burnham Dec., Ex. 5 at 20; Ex. 6 at 21.

19      The policies also include a "criminal acts" exclusion to professional liability

20  coverage.  Burnham Dec., Ex. 5 at 50; Ex. 6 at 53.  This exclusion precludes coverage for

21  "[a]ny liability arising out of any dishonest, fraudulent or criminal act committed by any

22  insured."  Burnham Dec., Ex. 5 at 50; Ex. 6 at 53.

1    Finally, the policies include an "abuse, molestation, harassment or sexual conduct"

2    exclusion to general liability coverage.  This exclusion precludes coverage for "[t]he

3    actual, threatened, or alleged abuse, molestation, harassment or sexual conduct of any

4    person in your care, custody and control."  Burnham Dec., Ex. 5 at 37; Ex. 6 at 41.  The

5    exclusion also precludes coverage for "[t]he negligent: (i) Employment; (ii) Investigation;

6    (iii) Supervision, hiring or training; (iv) Reporting to the proper authorities, or failure to

7    so report; (v) Retention; or (vii) Referral of any person for whom any insured is or ever

8    was legally responsible and whose conduct would be excluded by [the section] above."

9    Burnham Dec., Ex. 5 at 37; Ex. 6 at 41.

10    Under both policies, Nationwide has "the right and duty to defend the insured

11    against any 'suit' seeking" damages for bodily injury or personal and advertising injury.

12    Burnham Dec., Ex. 5 at 19, 23; Ex. 6 at 20, 24.  Nationwide does not have a "duty to

13    defend the insured against any 'suit' seeking damages" for bodily injury or personal and

14    advertising injury "to which this insurance does not apply."  Burnham Dec., Ex. 5 at 19,

15    23; Ex. 6 at 20, 24.

16    **C.    Reservation of Rights**

17    Mr. Barr, Ms. Barr, and PBA sought insurance coverage and defense counsel from

18    Nationwide in the underlying suit.  Comp. ¶ 14.  On May 30, 2014, Nationwide agreed to

19    defend Mr. Barr, Ms. Barr, and PBA subject to a reservation of rights.  Burnham Dec.,

20    Ex. 7.  Nationwide subsequently filed this declaratory judgment action.

21

22

# III. DISCUSSION

Nationwide moves for a declaratory judgment on its duty to defend and duty to indemnify.  Dkt. 12.  However, "a party may not make a *motion* for declaratory relief[;] rather, the party must bring an *action* for a declaratory judgment."  *Kam-Ko Bio-Pharm Trading Co., Ltd-Australasia v. Mayne Pharma (USA) Inc.*, 560 F.3d 935, 943 (9th Cir. 2009) (quoting *Int'l Bhd. of Teamsters v. E. Conference of Teamsters*, 160 F.R.D. 452, 456 (S.D.N.Y. 1995)).  The Court therefore construes Nationwide's motion as a motion for summary judgment.  *See id.* ("The only way plaintiffs' motion [for a declaratory judgment] can be construed as being consistent with the Federal Rules is to construe it as a motion for summary judgment on an action for a declaratory judgment.").

## A.    Summary Judgment Standard

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists

1  if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or

2  jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477

3  U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

4  626, 630 (9th Cir. 1987).

5          The determination of the existence of a material fact is often a close question. The

6  Court must consider the substantive evidentiary burden that the nonmoving party must

7  meet at trial—e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477

8  U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual

9  issues of controversy in favor of the nonmoving party only when the facts specifically

10  attested by that party contradict facts specifically attested by the moving party. The

11  nonmoving party may not merely state that it will discredit the moving party's evidence

12  at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W.*

13  *Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory,

14  nonspecific statements in affidavits are not sufficient, and missing facts will not be

15  presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

16  **B.      Insurance Policy Interpretation**

17          In Washington, the interpretation of insurance policies is a question of law. *Am.*

18  *Star Ins. Co. v. Grice*, 121 Wn.2d 869, 874 (1993), *opinion supplemented by* 123 Wn.2d

19  131 (1994). Washington courts construe insurance policies as a whole, giving force and

20  effect to each clause in the policy. *Id.* If the policy language is clear and unambiguous,

21  the Court will not modify the policy or create an ambiguity. *Id.* If the policy language is

22  fairly susceptible to two different reasonable interpretations, it is ambiguous, and the

1    Court may attempt to discern the parties' intent by examining extrinsic evidence. *Id.* If

2    the policy remains ambiguous after resort to extrinsic evidence, the Court construes the

3    ambiguities against the insurer. *Id.* at 874–75.

4    **C.      Nationwide's Motion**

5          Nationwide argues that it does not have a duty to defend or indemnify Mr. Barr,

6    Ms. Barr, and PBA in the underlying suit because Furnstahl's claims are not covered by

7    the Nationwide policies.  Dkt. 12.

8          In Washington, the duty to defend is broader than the duty to indemnify. *Woo v.*

9    *Fireman's Fund Ins. Co.*, 161 Wn.2d 43, 52 (2007).  The duty to defend arises when the

10   "complaint contains any factual allegations which could render the insurer liable to the

11   insured under the policy." *Hayden v. Mut. of Enumclaw Ins. Co.*, 141 Wn.2d 55, 64

12   (2000).  "The key consideration in determining whether the duty to defend has been

13   invoked is whether the allegation, if proven true, would render [the insurer] liable to pay

14   out on the policy." *Kirk v. Mt. Airy Ins. Co.*, 134 Wn.2d 558, 561 (1998).  If an insurer is

15   uncertain of its duty to defend, it may defend under a reservation of rights while seeking

16   a declaratory judgment that coverage does not exist. *Nat'l Sur. Corp. v. Immunex Corp.*,

17   176 Wn.2d 872, 879 (2013).  An insurer defending a suit under a reservation of rights

18   "must defend until it is clear that the claim is not covered." *Am. Best Food, Inc. v. Alea*

19   *London, Ltd.*, 168 Wn.2d 398, 405 (2010).  Meanwhile, the duty to indemnify depends on

20   "the insured's actual liability to the claimant and actual coverage under the policy."

21   *Hayden*, 141 Wn.2d at 64.

22

1    To determine whether the duty to defend exists, the Court first "examines the

2    policy's insuring provisions to see if the complaint's allegations are conceivably

3    covered." *Id.*  If the complaint's allegations are conceivably covered, the Court "must

4    then determine whether an exclusion clearly and unambiguously applies to bar coverage."

5    *Id.*  Exclusionary clauses are strictly construed against the insurer.  *Expedia, Inc. v.*

6    *Steadfast Ins. Co.*, 180 Wn.2d 793, 803 (2014).  The insurer bears the burden of proving

7    that an exclusionary clause applies.  *Am. Star Ins. Co. v. Grice*, 121 Wn.2d 869, 875

8    (1993).

9    In the underlying suit, Furnstahl alleges that C.F. was assaulted and falsely

10   imprisoned while she was in the defendants' care from September 2010 through 2011.

11   Beck Dec., Ex. J ¶¶ 3.3–3.6.  Furnstahl asserts that the defendants negligently breached

12   their duty to prevent reasonably foreseeable bodily injury and assault.  *Id.* ¶ 3.3.  She also

13   asserts that the defendants placed C.F. in a false light by recklessly disregarding the

14   falsity of statements.  *Id.* ¶ 3.6.  Furnstahl brings the following causes of action: (1)

15   negligence; (2) invasion of privacy; (3) battery; (4) assault; (5) intentional infliction of

16   emotional distress; and (6) false imprisonment.  *Id.* ¶ 4.2.

17   Nationwide does not dispute that Furnstahl's complaint contains claims that

18   conceivably fall within the general liability coverage provisions of the Nationwide

19   policies.  The policies provide general liability coverage for bodily injury.  Burnham

20   Dec., Ex. 5 at 19; Ex. 6 at 20.  The policies also provide general liability coverage for

21   personal and advertising injury, which includes injury arising from false imprisonment,

22   slander and libel, and invasion of privacy.  Burnham Dec., Ex. 5 at 32; Ex. 6 at 33.

1    Instead, Nationwide argues that three exclusionary clauses preclude coverage: (1) the

2    expected or intended injury exclusion; (2) the criminal acts exclusion; and (3) the abuse

3    exclusion.  Dkt. 12.

4        The overarching problem with Nationwide's arguments is the brevity of

5    Furnstahl's complaint.  Furnstahl's complaint contains minimal factual allegations.

6    Moreover, Furnstahl's claims are not limited to a specific defendant, act, or occasion.

7    Although Nationwide contends that Furnstahl's claims all flow from Mr. Barr's

8    intentional and criminal assault of C.F., this connection is not clear from Furnstahl's

9    complaint.  For example, Furnstahl alleges that C.F. was assaulted, but Furnstahl's

10   complaint does not reference Mr. Barr's criminal assault.  Indeed, the Court is unable to

11   determine which factual allegations, if any there are, support the assault claim.  To the

12   extent that Nationwide argues Furnstahl has not pled sufficient facts to support her

13   claims, *see* Dkt. 21 at 8, this argument should be raised in the underlying state court suit

14   because the Court is without jurisdiction to dismiss the underlying claims for failure to

15   provide sufficient factual allegations.

16       With this overarching problem in mind, the Court will address each exclusionary

17   clause in turn.

18   **1.     Expected or Intended Injury Exclusion**

19       Nationwide first argues that the expected or intended injury exclusion precludes

20   coverage.  Dkt. 12 at 9.  This exclusion precludes coverage for "'bodily

21   injury' . . . expected or intended from the standpoint of the insured."  Burnham Dec., Ex.

22   5 at 20; Ex. 6 at 21.  Nationwide contends that all of Furnstahl's claims stem from Mr.

1  Barr's intentional acts, and thus Nationwide may decline coverage for Mr. Barr, Ms.

2  Barr, and PBA.  Dkt. 12 at 9–11, 14–15 (citing *Farmers Ins. Co. of Wash. v. Hembree*, 54

3  Wn. App. 195 (1989)).

4        As a preliminary matter, Nationwide's reliance on *Hembree* is misplaced.  In

5  *Hembree*, the Washington Court of Appeals examined an intentional acts exclusion that

6  precluded coverage for bodily injury arising from the intentional acts of "an insured."  54

7  Wn. App. at 198.  The court determined that the exclusion "broadly excludes coverage

8  for all intentionally caused injury or damage by *an* insured, which includes anyone

9  insured under the policy."  *Id.* at 200.  In this case, however, the expected or intended

10  injury exclusion precludes coverage for bodily injury that is expected or intended from

11  the standpoint of "the insured."  Burnham Dec., Ex. 5 at 20; Ex. 6 at 21.  "When an

12  insurance policy contains an exclusion for 'the insured,' each insured is entitled to read

13  the policy as if applying only to that insured."  *Truck Ins. Exch. v. BRE Props., Inc.*, 119

14  Wn. App. 582, 591 (2003)).  The expected or intended injury exclusion must therefore be

15  applied separately to each insured.

16        With regard to whether this exclusion applies, the Court cannot conclude that it

17  clearly and unambiguously bars coverage at this time.  First, Furnstahl alleges that the

18  defendants acted negligently.  Beck Dec., Ex. J ¶¶ 3.3, 4.2.  Furnstahl's negligence claim

19  is not limited to a single defendant or occasion.  Thus, liability in the underlying suit

20  could be premised on any of the defendants' negligent acts.  Nationwide recognized that

21  negligent acts are covered under the policies in its reservation of rights letter.  Burnham

22  Dec., Ex. 7 at 5.

1       Additionally, Furnstahl alleges that the defendants falsely imprisoned C.F. and

2 invaded her privacy.  Beck Dec., Ex. J ¶¶ 3.5–3.6, 4.2.  The Nationwide policies

3 expressly provide coverage for personal and advertising injury arising from false

4 imprisonment and invasion of privacy.  Burnham Dec., Ex. 5 at 32; Ex. 6 at 33.  By its

5 plain terms, the expected or intended injury exclusion applies to bodily injury rather than

6 personal and advertising injury.[2]  *See* Burnham Dec., Ex. 5 at 20; Ex. 6 at 21.

7       Even if the exclusion does apply to personal and advertising injury, intentional

8 conduct is not necessary to establish liability for invasion of privacy by false light.  Under

9 Washington law, invasion of privacy by false light can occur if the defendant recklessly

10 disregarded a communication's falsity.  *Eastwood v. Cascade Broad. Co.*, 106 Wn.2d

11 466, 470–71 (1986).  In her complaint, Furnstahl alleges that the defendants placed C.F.

12 in a false light by recklessly disregarding the falsity of statements.  Beck Dec., Ex. J

13 ¶ 3.6.  Thus, liability in the underlying suit could also be premised on the defendants'

14 reckless disregard of a communication's falsity.

15

16

17

------------------------------

18     [2] The policies include a "knowing violation" exclusion for "'personal and advertising
injury' caused by or at the direction of the insured with the knowledge that the act would violate

19 the rights of another and would inflict 'personal and advertising injury.'"  Burnham Dec., Ex. 5
at 24; Ex. 6 at 25.  Nationwide relies on this specific exclusion for the first time in its reply brief.

20 Dkt. 21 at 6–7.  "As a general rule, a movant may not raise new facts or arguments in his reply
brief."  *Karpenski v. Am. Gen. Life Co., LLC*, 999 F. Supp. 2d 1218, 1226 (W.D. Wash. 2014)

21 (internal quotation marks omitted).  Even if the Court were to consider Nationwide's new
argument, Furnstahl's complaint alleges that the defendants acted negligently and with reckless

22 disregard.  Beck Dec., Ex. J ¶¶ 3.3, 3.6, 4.2.  Thus, the Court cannot conclude that this exclusion
clearly and unambiguously bars coverage.

1    Because Furnstahl's complaint includes claims that do not clearly and

2    unambiguously fall within the expected or intended injury exclusion, the exclusion does

3    not provide a basis for Nationwide to deny a defense in the underlying suit.

4    **2.    Criminal Acts Exclusion**

5    Next, Nationwide contends that the criminal acts exclusion precludes coverage.

6    Dkt. 12 at 11–12.  The exclusion states that the Nationwide policies do not apply to

7    "[a]ny liability arising out of any dishonest, fraudulent or criminal act committed by any

8    insured."  Burnham Dec., Ex. 5 at 50; Ex. 6 at 53.  According to Nationwide, Furnstahl's

9    claims arise from Mr. Barr's criminal acts, and thus Nationwide may decline coverage.

10   Dkt. 12 at 11–13, 14–15 (citing *Allstate Ins. Co. v. Raynor*, 143 Wn.2d 469 (2001)).

11   To begin with, this exclusion applies to professional liability coverage rather than

12   general liability coverage.[3]  Burnham Dec., Ex. 5 at 50; Ex. 6 at 53.  Additionally,

13   Furnstahl's claims do not necessarily rely on criminal acts.  As discussed above,

14   Furnstahl's complaint alleges conduct that is not limited to a specific defendant, act, or

15   occasion.  Indeed, Furnstahl's complaint does not specifically reference Mr. Barr's

16   criminal assault.  Furnstahl's complaint also alleges conduct occurring prior to the time of

17   Mr. Barr's criminal assault.  *Compare* Beck Dec., Ex. J ¶¶ 3.4–3.5, *with* Burnham Dec.,

18   Ex. 4 at 6.  While some of Furnstahl's claims could be construed to include Mr. Barr's

19   _____

20   [3] The policies include a "criminal acts" exclusion to general liability coverage for "'personal and advertising injury' arising out of a criminal act committed by or at the direction of the insured."  Burnham Dec., Ex. 5 at 24; Ex. 6 at 25.  Nationwide references this specific

21   exclusion for the first time in its reply brief.  Dkt  21 at 6.  As previously noted, "a movant may not raise new facts or arguments in his reply brief."  *Karpenski*, 999 F. Supp. 2d at 1226.  For the

22   reasons discussed above, the Court cannot conclude that this exclusion clearly and unambiguously bars coverage.

1    criminal assault, other claims do not invoke assault, let alone any criminal act.  Because

2    Furnstahl's complaint alleges a variety of conduct, potential liability cannot be attributed

3    to a single act.  This case is therefore distinguishable from *Raynor*, which involved a

4    wrongful death action arising from a single, discrete criminal act.  143 Wn.2d at 474,

5    476–77.

6          Moreover, under Washington law, "a criminal act exclusion does not apply to all

7    acts technically classified as crimes, but only to serious criminal conduct 'done with

8    malicious intent, from evil nature, or with a wrongful disposition to harm or injure other

9    persons.'"  *Id.* at 478 (quoting *Van Riper v. Constitutional Gov't League*, 1 Wn.2d 635,

10   642 (1939)).  It has not been established that any of the underlying actions involved

11   malicious intent.  For these reasons, the Court cannot conclude that the criminal acts

12   exclusion clearly and unambiguously bars coverage in this case.

13        **3.    Abuse Exclusion**

14        Finally, Nationwide references the abuse exclusion in its motion, but does not

15   discuss this exclusion in detail.  Dkt. 12 at 4.  The abuse exclusion precludes general

16   liability coverage for "[t]he actual, threatened, or alleged abuse, molestation, harassment

17   or sexual conduct of any person in your care, custody and control."  Burnham Dec., Ex. 5

18   at 37; Ex. 6 at 41.  The exclusion also precludes coverage for "[t]he negligent: (i)

19   Employment; (ii) Investigation; (iii) Supervision, hiring or training; (iv) Reporting to the

20   proper authorities, or failure to so report; (v) Retention; or (vii) Referral of any person for

21   whom any insured is or ever was legally responsible and whose conduct would be

22   excluded by [the section] above."  Burnham Dec., Ex. 5 at 37; Ex. 6 at 41.

ORDER - 14

1    By its plain terms, the abuse exclusion is limited to abuse, molestation,

2  harassment, and sexual conduct.  Furnstahl's complaint, however, does not allege abuse,

3  molestation, harassment, or sexual conduct.  While Furnstahl's battery claim may be

4  construed to include allegations of abuse, molestation, harassment, or sexual conduct, her

5  other claims do not necessarily imply these actions.  The Court cannot conclude that

6  Furnstahl's claims are clearly and unambiguously barred by the abuse exception.

7    **4.     Conclusion**

8    Nationwide has not established that these exclusionary clauses preclude coverage

9  in this case.  Nationwide has a duty to defend until it is clear that the underlying claims

10  are not covered.  In regards to Nationwide's duty to indemnify, Mr. Barr, Ms. Barr, and

11  PBA's actual liability in the underlying suit has not yet been determined.  Accordingly, it

12  is premature for the Court to decide whether Nationwide has a duty to indemnify.  *See*

13  *Hayden*, 141 Wn.2d at 64 ("The duty to indemnify hinges on the insured's actual liability

14  to the claimant and actual coverage under the policy.").  For these reasons, the Court

15  denies Nationwide's motion.

16                              **IV. ORDER**

17    Therefore, it is hereby **ORDERED** that Nationwide's motion for declaratory

18  judgment (Dkt. 12) is **DENIED without prejudice**.

19    Dated this 10th day of July, 2015.

20

21                              BENJAMIN H. SETTLE
                                United States District Judge

22

ORDER - 15